UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA
CRIMINAL NO. 17-cr-00067

VERSUS
JUDGE FOOTE

JOSE ALONSO HERNANDEZ
MAGISTRATE JUDGE HORNSBY

[INTERPRETER NEEDED]

**REPORT AND RECOMMENDATION**

**Introduction**

Defendant is charged with one count of possession with intent to distribute heroin. The heroin was discovered concealed inside a car battery that state troopers dismantled after a traffic stop on I-20 in Bossier Parish, Louisiana. Before the court is Defendant's **Motion to Suppress. Doc. 25.** For the reasons that follow, it is recommended that the motion be **denied**.

**Factual Background**

An evidentiary hearing was held on July 18, 2017. The testimony at the hearing, as well as a state trooper's dash camera video, established the following facts. Louisiana State Trooper George Strickland ("Strickland"), a member of the Criminal Patrol Division, was sitting in his vehicle in the median of I-20 when he saw defendant Jose Hernandez's vehicle pass by heading east. As a member of the Criminal Patrol Division, Trooper Strickland is not primarily interested in catching speeders on the interstate. He is looking for people

engaged in illegal activities such as drug smuggling, transporting stolen vehicles, and the like. He estimated that he has made approximately 50 traffic stops that have resulted in the seizure of narcotics.

Strickland initially noticed that Defendant had both hands on the steering wheel and his arms were straight out, thereby positioning his body behind the B-pillar of Defendant's vehicle. Strickland thought that Defendant was attempting to conceal himself from Strickland, so Strickland drove onto the interstate and began to follow Defendant. Strickland saw Defendant looking back at him in the mirror. Strickland also observed Defendant's vehicle briefly touch the right fog line before drifting back toward the center line. Strickland ran the license plate to make sure the car was not stolen, and then initiated a traffic stop. The basis of the stop was improper lane usage, La. R.S. 32:79. Defendant was the driver of the vehicle. The only passenger was a minor child, Defendant's stepson.

Strickland asked Defendant to exit his vehicle and stand near the rear of it. Strickland shook Defendant's hand, which Strickland described as sweaty. Defendant stated he left Brownsville, Texas the night before and was traveling to New York, New York. Strickland thought that Defendant was becoming more nervous as their conversation went on. Defendant was breathing heavily, and he tried to avoid eye contact.

Strickland asked Defendant how long he would be in New York and where he would be staying. Defendant said that he was staying with a friend for a couple of days, but he could not provide the friend's name. Defendant then tried to explain that he was visiting a

friend's ill sister, but Defendant again could not provide any names or addresses. Strickland believed that Defendant was involved in some kind of criminal activity.

Trooper Strickland returned to his patrol car and, while checking for warrants, called his partner, Trooper Brent Peart, for backup. A criminal history check revealed that Defendant had a prior arrest for possession with intent to distribute. Strickland also learned that Defendant's car, a 2006 Ford Focus, had been registered to Defendant for only about a week before the traffic stop and that the vehicle's insurance was issued for only a one month term. Strickland testified that drug traffickers often buy such older model cars in the event the vehicles are seized by law enforcement.

After Trooper Peart arrived, Trooper Strickland exited his patrol car and asked Defendant for consent to search his car. Defendant readily granted both oral and written consent. The consent form signed by Defendant was in Spanish.

Strickland began searching the inside of the car and, in the process of doing so, released the latch for the hood/engine compartment. Trooper Peart looked under the hood of Defendant's car and saw what appeared to him to be an oversized car battery. Peart called for Strickland to come look at the battery. Video at 20:46. The photographs show that the battery does appear to be larger than one might expect in a small economy car such as a Ford Focus. Government Exs. 1-3. The troopers tapped on the battery, which sounded hollow. The troopers had received training about how drug traffickers use batteries to smuggle or transport drugs. Peart told Strickland the battery would have to be removed, and he asked Strickland to go get a tool set. The video shows Strickland walking back to his police unit.

Strickland testified that, before he returned with the tools, Peart was able to lift one corner of the top of the battery and see its contents. Peart saw what appeared to be duct-taped bundles of drugs. Peart immediately placed Defendant under arrest. Video at 21:12.

After Peart orally advised Defendant of his Miranda rights, Defendant asked what was going on. Peart replied: "You know what's going on. You've got a battery full of dope." Defendant and his stepson were placed in police vehicles while the officers took photographs of Defendant's car. At 30:00, the video shows the officers open the hood again to take pictures of the battery. The bottom photograph on Government Ex. 2 shows a trooper's hand lifting the corner of the battery to expose the bundles of contraband.

The troopers attempted to remove the bundles, but they could not do so without removing and opening the battery. Because of the danger involved in opening an operational battery on the side of the road, Strickland and Peart decided to drive Defendant's vehicle to the nearby Troop G state police headquarters for further investigation.

Strickland testified that, once the battery was removed from the vehicle at the station, "[w]e had to cut the battery apart in order to remove the packages." Most of the battery had been hollowed out and lined with lead. Strickland testified that the lead lining helps drug traffickers avoid x-ray detection of the drugs while crossing the border. Only a small part of the battery was operational, probably just enough to start and run the car. Inside the battery were 10 bundles that contained a total of approximately 8.5 pounds of heroin.

**Defendant's Motion to Suppress**

Defendant argues that the Government cannot prove that the traffic stop was lawful.

He does not dispute that he consented to a search of the car and its contents after the stop. But he does argue that he did not consent to the damaging or destruction of any part of his car, including the battery.

**The Traffic Stop**

    **A. Applicable Law**

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 2014 WL 6065297, at *4-5 (5th Cir. 2014); United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir.2005). "Reasonable suspicion" analysis requires assessing the totality of the circumstances to ascertain the reasonableness of the suspicion. United States v. Powell, 732 F.3d 361, 369 (5th Cir.2013) (citation omitted). This is consistent with the "touchstone of Fourth Amendment analysis [being] reasonableness", which "requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement." United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004) (en banc).

The Supreme Court held unanimously in <u>Whren v. United States</u>, 517 U.S. 806 (1996): "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." <u>Id</u>. at 810. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." <u>United States v. Zavala</u>, 541 F.3d 562, 575 (5th Cir.2008) (quoting <u>United States v. Castro</u>, 166 F.3d 728, 733 (5th Cir.1999) (en banc)). Therefore, probable cause to make a traffic stop exists, *inter alia*, when a defendant commits a traffic violation and a law-enforcement officer observes the violation. <u>United States v. Khanalizadeh</u>, 493 F.3d 479, 482 (5th Cir. 2007).

"The rule established by the Supreme Court in <u>Whren</u> allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop." <u>United States v. Cole</u>, 444 F.3d 688, 689 (5th Cir. 2006). The legal justification for the traffic stop must simply be "objectively grounded." <u>Id</u>.

**B. The Stop Was Lawful**

Trooper Strickland testified that when he pulled onto the roadway and caught up to Defendant's vehicle, he could see Defendant looking back at him in his mirror. Strickland testified that he then saw Defendant's vehicle's passenger-side tires touch the right hand side fog line "only once" and "only for a moment," before the car drifted back into the lane. The movement was not sudden, but Strickland believed it was enough to justify a traffic stop for "weaving."

Strickland could have activated his dash camera manually once he approached Defendant's vehicle to begin following it, but he did not do that. Instead, the recording does not begin until Trooper Strickland activated his overhead emergency lights. Therefore, the recording does not show the alleged traffic violation.

The statute that Strickland cites to justify the stop is La. R.S. 32:79(1), which provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Drivers on an interstate highway will often see other vehicles touch the fog line "for a moment" with no apparent safety risk. And it would not be unexpected or unusual to see a single and momentary touch of the right fog line with a tire if the driver is being approached at high speed by a Louisiana State Police SUV, and the driver is looking back in his mirror at the approaching vehicle. Be that as it may, the Louisiana Supreme Court has held that merely touching the right fog line "for no apparent reason" is a violation ("albeit a minor one") of La. R.S. 32:79(1). State v. Waters, 780 So.2d 1053, 1056-1057 (La. 2001). The court accepts Trooper Strickland's testimony that he witnessed such a violation. Accordingly, the traffic stop was justified at its inception.

### C. No Undue Delay

Defendant does not argue that the stop was unduly delayed before consent to search was obtained. But it bears noting that, upon coming into contact with Defendant, Trooper Strickland quickly suspected that criminal activity was afoot. Defendant said he was traveling from Brownsville to New York (a two day drive) for only a two day visit, yet he did not know the name or address of whomever he was going to visit. He had a prior arrest for a drug offense, and his car's paperwork was suspicious. Those facts, together with the presence of a minor child and Defendant's excessive nervousness, provided reasonable suspicion that Defendant was engaged in illegal trafficking of a child or illegal drugs. At the time Strickland requested and obtained consent, the traffic stop had not been unduly prolonged.

## Defendant's Consent and Destruction of the Car Battery

### A. Introduction; Consent

The primary issue in Defendant's motion is the destruction of the car battery. Defendant cites United States v. Strickland, 902 F.2d 937 (11th Cir. 1990) for the proposition that when an individual consents to a search of his vehicle, he need not anticipate that the search will involve the destruction of the vehicle, its parts, or contents.

Under the Fourth Amendment, the standard for measuring the scope of a suspect's consent is that of objective reasonableness—what would the typical person have understood by the exchange between the officer and the suspect? Florida v. Jimeno, 500 U.S. 248, 251 (1991). Trooper Strickland told Defendant that he sees lots of criminal activity on the

highways, such as human trafficking, drugs, and the like, and asked Defendant (video at 10:50): "Do you have anything illegal in your car?" Defendant said, "No." Strickland then asked, "Can I search your car?" Defendant readily agreed. Trooper Strickland then asked Defendant is he could read and write English, following which Trooper Strickland presented Defendant with a Consent to Search Form. Government Ex. 5. The bottom half of the form is written in Spanish, and Defendant signed the Spanish version.

The consent form (the corresponding English version) states that Defendant voluntarily authorized Trooper Strickland to search the Ford Focus "and its contents, which are owned or controlled by me and remove any items the Louisiana State Police deems pertinent to their investigation, providing (sic) a receipt is furnished for the removed items." Defendant's oral and written consent constituted a *general consent* to search the vehicle. There were no limitations on the scope of Strickland's request for consent (such as "can I look in your trunk") or in Defendant's granting of his consent (such as "my luggage, yeah"). See United States v. Cotton, 722 F.3d 271 (5th Cir. 2013).

**B. Searching Under the Hood**

The next issue is whether Defendant's general consent extended to the opening of the hood of the car and searching the engine compartment. In United States v. McSween, 53 F.3d 684 (5th Cir. 1995), the Fifth Circuit held that general consent to the search of a vehicle includes the right to open the hood and search the engine compartment. The court noted that the defendant never objected to the scope of the search, and, in such circumstances, a failure to object to the breadth of the search is properly considered an indication that the search was

within the scope of the initial consent.  Id. at 688, citing United States v. Cannon, 29 F.3d 472, 477 (9th Cir. 1994).

Defendant stood at the rear of his car while the troopers performed their search.  He was also present when the troopers opened the hood of the car and began searching the engine compartment.  At no time did Defendant object to the scope of the search or attempt to limit his consent in any way, even though the written consent form advised him that he "may refuse to consent to any search and [ ] I may revoke my consent to search at any time." The search of the engine compartment was proper.

**C.  Lifting the Battery Cover**

The next issue is whether Trooper Peart properly lifted a corner of the top of the battery to inspect the battery's contents.   As explained above, Strickland had reasonable suspicion that Defendant was engaged in illegal activity. That reasonable suspicion led Strickland to request and receive general consent to search the car and its contents.  That consent allowed the troopers to search any part of the car or its containers where they believed contraband would be found.  Jimeno, supra; United States v. Soriano, 497 F.2d 147, 149 (5th Cir. 1974)(en banc).  In fact, the Fifth Circuit has held that general consent to search a car includes consent to search a speaker box inside the trunk, United States v. Torrellas, 197 Fed.Appx. 318 (5th Cir. 2006), open a paper bag inside of a car, United States v. Crain, 33 F.3d 480, 484 (5th Cir. 1995), and unscrew two screws to remove vent covers inside the car. United States v. Flores, 63 F.3d 1342, 1362 (5th Cir. 1995).

Lifting the corner of the top of the battery—which was made possible by the lack of glue to hold that corner down—did not damage the battery or render it useless or inoperable. Indeed, the troopers later drove Defendant's car to Troop G headquarters using the car's battery to start and power the car. Peeking inside the battery (under the circumstances in this case) was no less intrusive or damaging than looking under the gas cap, United States v. Lopez, 968 F.2d 1219 (7th Cir. 1992), pulling away a loose cardboard divider in the hatchback area of a car, United States v. Gutierrez-Mederos, 965 F.2d 800 (9th Cir. 1992), pulling back paneling on the passenger side door of a minivan in a minimally intrusive manner, United States v. Mayo, 627 F.3d 709 (8th Cir. 2010), or removing a truck's stereo speaker covers which were easy to unscrew and replace without damaging the truck. United States v. Garcia, 604 F.3d 186 (5th Cir. 2010).

**D. Dismantling the Battery**

The final issue is whether the troopers properly removed, opened, and destroyed the battery at Troop G headquarters to remove the contraband. When Trooper Peart lifted the corner of the battery and saw duct-taped bundles of apparent contraband, he had probable cause to arrest Defendant and search the car, including the battery, without a warrant. It is well settled that a vehicle may be searched without either permission or a warrant if there is probable cause to believe it contains contraband. United States v. Ford, ___ Fed.Appx. ___, 2017 WL 2729521 (5th Cir. 2017). Exigent circumstances are not required for a search to be constitutional under the automobile exception. Id, citing Maryland v. Dyson, 527 U.S. 465, 466 (1999). If a car is readily mobile and probable cause exists to believe it contains

contraband, the Fourth Amendment permits police to search the vehicle without more. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).

An automobile search may include some injury to the vehicle or the items within the vehicle, if the damage is reasonably necessary to gain access to a specific location where the officers have probable cause to believe that the object of their search is located. United States v. Ross, 456 U.S. 798, 817-819, 823 (1982). The Fifth Circuit recently addressed the damaging of an item of clothing during a *consensual* search in United States v. Gonzalez-Badillo, __ Fed. Appx. __, 2017 WL 2615450 (5th Cir. 2017). The undersigned discovered that decision after the suppression hearing, so supplemental briefs were requested to allow the parties an opportunity to argue its applicability to this case.

There, the defendant was standing in line to board a bus traveling from Laredo to Houston when he spoke to a police officer and made several strange comments about his itinerary. The officer asked for and received the defendant's permission to search his travel bag. The officer told the defendant that he was looking for anything illegal traveling through the bus station.

As soon as the officer opened the bag, he smelled a strong chemical odor that he recognized as a masking agent used in drug smuggling. The officer also saw a pair of used work boots inside a plastic shopping bag. When the officer grasped the bag containing the boots, he could feel that the soles of the boots were lumpy, as if they were filled with sand. During his training, the officer had felt boots like this that were being used to smuggle drugs.

The officer told the defendant that he was 99 percent sure that there were drugs in the boots, and the officer lifted the boots up for the defendant to smell them. The defendant then began sweating more and made a surprising face. After removing the boots from the plastic bag, the officer observed a small opening on the side of one of the boots where it appeared that the sole was not glued all the way shut. The officer could see plastic inside the sole. The officer then pulled the sole away from the boot and discovered a bag containing heroin.

In a 2-1 unpublished decision, the Fifth Circuit affirmed the denial of the defendant's motion to suppress. Although the Fifth Circuit acknowledged that a general consent to search usually does not include locked containers, the defendant's boot was not akin to a locked container. The officer's actions did not destroy the already damaged boots or render them any less useful than they had been before the sole was pulled away. Instead, the officer's actions inflicted minimal damage on the boot, the sole of which had previously been pried open and glued down to insert drugs.

Judge Elrod dissented from the majority's decision. She did not believe that the defendant's consent to search his bag included consent to dismantle and damage boots located within the bag. She also did not believe that exigent circumstances existed to justify the dismantling of the boots. She believed the officer had probable cause (or at least reasonable suspicion) to detain the defendant while obtaining a warrant.

This case is different from Gonzalez-Badillo in that the automobile exception clearly applies to the troopers' removal, opening, and destruction of the car battery. At the time they arrested Defendant on the side of the road, they had probable cause to believe the battery

contained drugs. And if probable cause justified a warrantless search of the battery on the roadside, which it did, that same probable cause also justified a search at the police station after the car was seized and transported there. Chambers v. Maroney, 399 U.S. 42 (1970); United States v. Kye Soo Lee, 962 F.2d 430, 438 (5th Cir. 1992). As stated above, exigent circumstances are not required if the automobile exception applies.

Trooper Strickland testified that the drugs could not be removed without cutting the battery into pieces, because whoever put the drugs in the battery had glued them to the inside of the battery. General consent alone is not enough to destroy or render a container completely useless unless the officers obtain explicit authorization or have some other, lawful basis upon which to proceed. But if the police develop probable cause during a consensual search, that probable case can support damaging or destroying a container if necessary to complete the search and remove the contraband. United States v. Carbajal-Iriarte, 586 F.3d 795, 802-803 (10th Cir. 2009)(drug dog alerted during a consensual search of a van; cutting open upholstery on van's seat was justified by probable cause; it was immaterial whether the defendant consented to cutting open the seat); United States v. Strickland, 902 F.2d 937, 941-943 (11th Cir. 1990)(even though defendant's consent did not authorize the officers to cut open his spare tire, the search was permissible because the officers obtained probable cause to search the tire during the portion of the search to which the defendant did consent). Here, the troopers had an independent basis—probable cause—to open the battery and destroy it, if necessary, to remove the drugs.

**Conclusion**

Trooper Strickland initiated a lawful traffic stop of Defendant for improper lane usage under Louisiana law. Strickland then obtained reasonable suspicion that Defendant was involved in illegal behavior which, in turn, justified requesting and obtaining Defendant's consent to search. During the consensual search, the troopers developed probable cause that the battery contained illegal drugs. That probable cause permitted the officers to open and destroy the battery to remove the drugs.

Accordingly,

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 25)** be **denied.**

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en

banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 4th day of August, 2017.

Mark L. Hornsby
U.S. Magistrate Judge